### GEER v. SCHOOL DIST. NO. 11 IN OURAY COUNTY.

(Circuit Court of Appeals, Eighth Circuit. October 28, 1901.)

No. 1,521.

1. SCHOOL DISTRICTS—POWER TO CREATE INDEBTEDNESS—COLORADO STATUTES.

Under Const. Colo. art. 11, § 7, and the statutes of the state in force in 1892, a school district of the third class has power, when authorized by a majority vote of the qualified electors, to incur an indebtedness, without limit as to amount, for the purpose of procuring sites and erecting school houses thereon, which the statute makes it the duty of such district to provide. The only limitation upon such power is the provision of Mills' Ann. St. § 4057, that "in no case shall the aggregate amount of bonded indebtedness of any school district exceed three and one-half per cent. of the assessed value of the property of such district," which, construed in the light of the other constitutional and statutory provisions, does not affect the power to create a general indebtedness, to be liquidated by concurrent taxation.

2. SAME—SALE OF VOID BONDS—IMPLIED LIABILITY FOR CONSIDERATION RECEIVED.

A school district which had ample power to create a general indebtedness for the purpose of erecting school houses, and which exercised such power by a vote of its electors, at an election duly held, to borrow a sum of money for that purpose, and by borrowing such money and using it in the building of a school house, is liable to the lender for its repayment, and cannot avoid such liability because the lender innocently accepted bonds for the amount, which, by reason of a limitation on its power to issue bonds, were void ab initio; and a subsequent purchaser of the bonds from the original holder is subrogated to his rights against the district.

3. SAME—LIMITATION OF ACTION.

Where a school district issued and sold bonds which were void for want of power to issue the same, but the district continued to recognize their validity by levying taxes to pay the interest thereon, and by promising to pay the same for some years afterward, limitation did not begin to run against an action by the holder to recover the consideration paid until the district took some action indicating its intention to repudiate the bonds

Thayer, Circuit Judge, dissenting.

In Error to the Circuit Court of the United States for the District of Colorado.

Robert C. Geer, the plaintiff in error, brought his action in the circuit court for the district of Colorado against school district No. 11 in the county of Ouray, defendant in error, to recover, as in indebitatus assumpsit, the sum of $10,000, alleged to have been paid by him for 10 certain bonds issued by the officers of the school district July 1, 1892, and interest thereon. The complaint sets forth in detail all the facts attending the original issue of the bonds; the laws of Colorado relating to the power of the school district to create the original indebtedness evidenced by the bonds, all of which will be sufficiently referred to in the opinion; the sale of the bonds by the school district to plaintiff's assignor, and by him to plaintiff, for their full face value; the receipt by the school district of the purchase price; the application of the same to the erection and equipment of a school building for the district; the use and enjoyment of the building by the district from the date of its erection until this suit was instituted; the assessment and levy of a tax for the payment of interest maturing on the bonds from 1892 to 1896; the actual payment of such interest for the year 1893; the repeated promise of the district to pay the interest accrued and accruing until November, 1897; the institution of a suit on November 29, 1897, to recover past-due interest on the same; the interposition of a defense by the district to the effect that the bonds to which the coupons were attached were void because in excess of the limit of 3½ per cent. of the assessed value of the property of the district, created by the statute of Colorado; the judgment of the trial court, and affirmance thereof by this court, sustaining the defense so made, and declaring the bonds void and of no effect in law. A demurrer was interposed to this complaint, alleging that it did not state facts sufficient to constitute a cause of action, that the right of plaintiff had been adjudicated in the former action on the bonds, and that plaintiff's right of recovery, if any he ever had, was barred by the statutes of limitations. This demurrer was sustained by the trial court, and final judgment entered in favor of defendant. From this judgment a writ of error was taken.

Albert E. Pattison, for plaintiff in error.

J. P. Cassedy, for defendant in error.

Before SANBORN and THAYER, Circuit Judges, and ADAMS, District Judge.

ADAMS, District Judge, after stating the case as above, delivered the opinion of the court.

The defendant was a school district in the county of Ouray and state of Colorado, and as such was a corporation empowered to make contracts, and to hold so much real estate as was necessary for the location and construction of a school house. Sections 4004, 4013, Mills' Ann. St. Colo. A positive duty was imposed upon the district to purchase a lot and build a school house when directed by a vote of the district to do so. Section 4015, Id. The district had power conferred upon it by the constitution of the state, when authorized by a majority vote of the tax-paying electors, to create a debt by loan, without limit in amount, for the purpose of purchasing such lot and building such school house. Section 7, art. 11, Const. Colo. School districts of the third class, to which defendant in error belongs, had power, when authorized by a majority vote of the qualified electors, to raise by taxation money sufficient "to purchase or lease a suitable site for a school house, or school houses." Section 4027, Id. Such school district also had the power to create a bonded indebtedness for the purpose of raising money to purchase

sites, and erecting thereon school buildings. Section 4057, Id. From the foregoing provisions of the laws of Colorado, it is obvious, in our opinion, that it was left to the voters of school districts to determine whether there should be one or more buildings, how much they should cost, and whether they would raise a tax to pay for the same themselves, or whether they would create a bonded indebtedness, and saddle the payment of the same upon posterity. The record of this case shows that they attempted to adopt the latter course. They secured a valuable school building, and attempted to pay for the same by the issue of bonds which were, ab initio, void. The question for our determination is whether, under the constitution and laws of Colorado, the proceedings taken and acts done by the district created an indebtedness which may be lawfully asserted against it, notwithstanding the fact that the person from whom it borrowed the money unwittingly accepted void bonds as evidence of his right against the district. As already stated, the constitution of the state imposes no limit as to the amount of indebtedness which a district may create for the laudable purpose of furnishing school facilities for its children. The provision referred to is as follows:

"No debt by loan in any form shall be contracted by any school district for the purpose of erecting and furnishing school buildings, or purchasing ground, unless the proposition to create such debt shall first be submitted to such qualified electors of the district as shall have paid a school tax therein in the year next preceding such election, and a majority of those voting thereon shall vote in favor of incurring such debt." Section 7, art. 11, supra.

By fair implication, this constitutional inhibition means that a debt by loan in some form or other may be created by a school district for the purpose of erecting and furnishing school buildings or purchasing grounds therefor, if the proposition to create such debt shall first be submitted to, and receive the approval of, a majority of the tax-paying voters. Acting under this ample grant of power, recognized and emphasized by subsequent statutory enactments, and in the discharge of an express statutory duty, as already pointed out, the district undertook to secure a school house. It proceeded under the provisions of section 4057, Mills' Ann. St. This section, so far as it is now necessary to notice it, is as follows:

"On the petition of twenty legal voters of any school district, the secretary of said district shall give notice not less than twenty days before any regular or special meeting, held under the provisions of this chapter, that the question of contracting a bonded debt for the purpose of erecting and furnishing school buildings or purchasing ground or for funding floating debts, will be submitted to such qualified voters of the district as have paid a school tax therein in the year next preceding the said meeting. * * * The electors aforesaid shall first agree by a majority vote on the amount of indebtedness to be created, if any, (but in no case shall the aggregate amount of bonded indebtedness of any school district exceed three and one-half per cent of the assessed value of the property of such district) and shall then proceed to vote by ballot 'For the bonds' or 'Against the bonds' and the ballot-box for this purpose shall be kept open as provided in section forty-four (44) of this act, and if it appear that a majority of all the votes cast are 'For the bonds,' the board of directors, as soon as practicable, shall issue coupon bonds of the district, bearing interest," etc.

The complaint avers that:

"Prior to the first day of July, A. D. 1892, the said defendant pursuant to the authority upon it conferred by the laws of this state, and in due accordance therewith, being thereunto duly authorized by the vote of the duly qualified electors of the said defendant, cast at an election properly called and duly held in accordance with the statute in such case made and provided, determined to erect a school building within said district and also to create a debt to defray the cost and expense of the erection of said building to the amount of $10,000."

For the purposes of this case, the facts so pleaded must be taken to be true. The proceedings so charged to have been taken are in strict accord with the statute (section 4057) just quoted. It there appears that the first question to be submitted to the qualified electors, and upon which they are first to vote, is whether the district shall create an indebtedness for the erection of a school building, and, if so, in what amount. If this first proposition is carried by a majority vote, the electors then, and not till then, proceed to vote upon the proposition of issuing the bonds of the district; and, if a majority of the votes cast are "for the bonds," the board of directors of the district is authorized to issue the same. So far this section is in perfect harmony with the fundamental law of the state and the statutes to which reference has been made, namely, that a debt may be created, large or small, according to the judgment of the qualified electors of the district, for the purpose of building such a school house, as they, in their discretion, deem necessary and advisable. But it appears that there is a certain limitation found in the statute (section 4057, supra). It is there enacted, following the provision for submission to the popular vote of the question whether any indebtedness shall be created, and, if so, how much, that "in no case shall the aggregate amount of bonded indebtedness of any school district exceed three and one-half per cent. of the assessed value of the property of such district." It was on the strength of this last provision of section 4057 that this court held that the bonds issued by the county were void, because it appeared they were issued largely in excess of 3½ per cent. of the assessed value of the property of the district. Geer v. School Dist., 38 C. C. A. 392, 97 Fed. 732. It would seem clear from the language employed that the limitation above referred to relates exclusively to the amount of bonded indebtedness which the district might create, and does not relate at all to the amount of indebtedness the electors of the district might create for themselves to pay by a tax to be authorized by section 4027, supra. In fact, the limitation is, by the very language employed, confined to bonded indebtedness. Not only is this so, but the statute in question affords strong intrinsic evidence that there might be another kind of indebtedness to which no limitation applied. The electors at the meeting were first to vote on a proposition whether they would create any indebtedness, and, if so, how much. If this proposition was not carried, no vote on the proposition to issue bonds would be possible. If, on the other hand, this proposition was carried, the next proposition, to issue bonds, manifestly might be defeated, in which case the district

might be relegated to section 4027, supra, to provide means for paying the created indebtedness by taxation. It is urged upon us that the only indebtedness which the district might create for the building of school houses was a bonded indebtedness, and that, inasmuch as there was a statutory barrier against the creation of any such indebtedness in excess of 3½ per cent. of the assessed value of the property of the district, such barrier interposed a fatal objection to a recovery on the original consideration paid for bonds issued in excess of that limit. In the light of the foregoing analysis of the constitution and laws of Colorado, we cannot agree with this view. On the contrary, we are of opinion that the constitution and all the statutes relating to the subject in question, including section 4057, upon which reliance is mainly placed, clearly contemplate and provide for the creation of a general indebtedness to be liquidated by concurrent taxation if the qualified electors of the district so determine, as well as for the creation of a bonded indebtedness to be paid at a distant time in the future. It follows that the limitation as to the amount of permissible bonded indebtedness has no application to the other kind of indebtedness which might be created for the building of school houses, and which by the provisions of the law is limited only by the necessities of the district according to the judgment of the duly-qualified electors. This necessitates the conclusion that there was in 1892 no constitutional or statutory limit as to the amount of the general indebtedness which the tax-paying voters of a school district like the defendant in error might voluntarily impose upon themselves for the purpose of building a school house; that the only limit created by the statute is upon their voting a bonded indebtedness, entailing the payment of it upon posterity.

The next question relates to the effect of issuing void bonds in payment of an indebtedness which the properly qualified voters of the district had power to create, and which by the necessary majority vote they did create. Does the innocent acceptance of these void undertakings of the district, supposed to evidence valid obligations for money borrowed, preclude recovery on the original consideration as for money had and received? We may readily concede that, if the district had no power to create the indebtedness at all (that is to say, if the limit of 3½ per cent. found in section 4057 applied to any kind of indebtedness besides bonded indebtedness), there could be no recovery either on the original consideration, or upon the bonds which might be issued in evidence thereof. But, as already seen, such is not the fact. For this reason the case of Litchfield v. Ballou, 114 U. S. 190, 5 Sup. Ct. 820, 29 L. Ed. 132, upon which the learned judge who tried the case below predicated his judgment, and upon which defendant in error mainly relies in argument, has no application. In that case plaintiff sought to recover the original consideration paid for bonds of a municipality which had been declared void in an action brought on them because in excess of a limit of indebtedness fixed by the constitution of Illinois. So far that case is parallel to the one now under consideration, but here the parallelism ceases. The constitution of Illinois (article 9, § 12) ordained that:

"No county, city, township, school district, or other municipal corporation shall be allowed to become indebted in any manner or for any purpose to an amount, including existing indebtedness, in the aggregate exceeding five per centum of the value of the taxable property therein."

Mr. Justice Miller, in delivering the opinion of the court, analyzes this constitutional provision as follows:

"It [the municipality] shall not become indebted. Shall not incur any pecuniary liability. It shall not do this in any manner. Neither by bonds, nor notes, nor by express or implied promise. Nor shall it be done for any purpose,"—and concludes thus: "If this prohibition is worth anything, it is as effectual against the implied as the express promise, and is as binding in a court of chancery as in a court of law."

Neither the constitution nor the statutes of Colorado contain any such prohibition. On the contrary, as already pointed out, the school district was fully empowered by many direct and positive provisions to create any amount of indebtedness for providing school houses for its children, provided only it did not issue bonds therefor, and thus make a charge upon futurity, in an amount in excess of 3½ per cent. of the value of its taxable property. The natural indisposition on the part of tax-paying voters to burden themselves with a present indebtedness obviously was considered a sufficient safeguard against extravagance even in the praiseworthy object of educating their children.

We think the case under consideration has now been reduced to about the following proposition: Can the school district, which had ample power to create a general indebtedness for the purpose of erecting school houses, which exercised the power, by voting at an election duly called, to create such indebtedness in the sum of $10,-000, which borrowed the money for the purpose of erecting, and with the money so borrowed actually erected, the school house, which it has ever since used and enjoyed, escape payment of the same because, forsooth, it persuaded the lender to unwittingly accept void bonds therefor? In our opinion, it cannot. Any other conclusion would be a sad commentary on the efficiency of courts of justice to do justice. The authorities, in our opinion, fully sustain this conclusion. In the case of San Francisco Gas Co. v. City of San Francisco, 9 Cal. 453, 469, 472, the late Mr. Justice Field, then a member of the supreme court of California, said:

"Under some circumstances a municipal corporation may become liable by implication. The obligation to do justice rests equally upon it as upon an individual. It cannot avail itself of the property or labor of a party, and screen itself from responsibility under the plea that it never passed an ordinance on the subject. As against individuals, the law implies a promise to pay in such cases, and the implication extends equally against the corporations. This is as well established by the authorities as any law can be. * * * Where the contract is executory, the corporation cannot be held bound, unless the contract is made in pursuance of the provisions of its charter; but where the contract has been executed, and the corporation has enjoyed the benefit of the consideration, an implied assumpsit arises against it."

The supreme court of California, speaking also by Judge Field, in the case of Argenti v. City of San Francisco, 16 Cal. 255, 282, made use of the following language:

"If the city obtain the money of another by mistake or without authority of law, it is her duty to refund it, not from any contract entered into by her

on the subject, but from the general obligation to do justice which binds all persons, whether natural or artificial. If the city obtain other property which does not belong to her, it is her duty to restore it, or, if used by her, to render an equivalent to the true owner, from the like general obligation. In these cases she does not in fact make any promise on the subject, but the law, which always intends justice, implies one, and her liability thus arising is said to be liability upon an implied contract. * * *"

In Paul v. City of Kenosha, 22 Wis. 266, 94 Am. Dec. 598, the supreme court of that state, treating of the general subject under consideration, said:

"The city bonds, it appears, were void when the agents of the city sold them to the plaintiff. Is it just and equitable that the city retain the money which it has received for its own worthless bonds? The plaintiff took the bonds upon the presumption that they were valid securities, and paid his money, or its equivalent, to the city for them. They turned out to be void for want of power on the part of the city to issue them, and he seeks to recover back the money paid as upon a failure of consideration. Can he not recover the amount he has paid to the maker for its worthless paper? It seems to us unnecessary to go into the authorities upon this question. * * * Upon the ground, therefore, that the amount recovered was paid upon a consideration which has failed, we think the judgment right."

This last-mentioned case is apt authority for the conclusion reached in the present case, where there was no want of power to create the original indebtedness, but only a want of power to issue the bonds.

Mr. Justice Field, who wrote the opinions in the California cases referred to, speaking for the supreme court of the United States in the analogous case of Marsh v. Fulton Co., 10 Wall. 676, 684, 19 L. Ed. 1040, says:

"We do not mean to intimate that liabilities may not be incurred by counties independent of the statute. Undoubtedly they may be. The obligation to do justice rests upon all persons, natural and artificial; and, if a county obtains the money or property of others without authority, the law, independent of any statute, will compel restitution or compensation."

In the case of Louisiana v. Wood, 102 U. S. 294, 26 L. Ed. 153, the following facts appear: On March 28, 1872, the general assembly of Missouri passed an act which declared that, before any bond issued by a municipality should obtain validity or be negotiated, such bond should be presented to the state auditor to be registered. On July 16, 1872, after this act had become effective, the town of Louisiana issued its bonds in the sum of $21,000. They were antedated to January 1, 1872,—a period prior to the enactment of the act of March 28th,—and were not registered as required by that act. After these bonds had been declared invalid by the supreme court of the United States in Anthony v. Jasper Co., 101 U. S. 693, 25 L. Ed. 1005, an action was brought to recover back the money paid for the bonds. In affirming the judgment in favor of the plaintiff, Chief Justice Waite, among other things, said:

"In Moses v. Macferlan, 2 Burrows, 1005, it is stated as a rule of the common law that an action 'lies for money paid by mistake or upon a consideration which happens to fail, or for money got through imposition.' The present action can be sustained on either of these grounds. The money was paid for bonds apparently well executed, when in fact they were not, because of the false date they bore. This was clearly money paid by mistake. The consideration on which the payment was made has failed, because the bonds were not in fact valid obligations of the city. * * * While, there-

fore, the bonds cannot be enforced, because defectively executed, the money paid for them may be recovered back. As we took occasion to say in Marsh v. Fulton Co., 10 Wall. 676, 19 L. Ed. 1040, 'The obligation to do justice rests upon all persons, natural or artificial, and, if a county obtains the money or property of others without authority, the law, independent of any statute, will compel restitution or compensation.'"

In Chapman v. Douglas Co., 107 U. S. 348, 356, 2 Sup. Ct. 62, 69, 27 L. Ed. 378, 381, Mr. Justice Matthews, speaking for the supreme court, discusses propositions essentially like those now under consideration, and says in part:

"The principle was applied in the case of Morville v. Society, 123 Mass. 129, 137, 25 Am. Rep. 40, 43, where it was said: 'The money of the plaintiff was taken and is still held by the defendant under an agreement which it is contended it had no power to make, and which, if it had power to make, it has wholly failed on its part to perform. It was money of the plaintiff, now in the possession of the defendant, which in equity and good conscience it ought now to pay over, and which may be recovered in an action for money had and received. The illegality is not that which arises where the contract is in violation of public policy or of sound morals, and under which the law will give no aid to either party. The plaintiff himself is chargeable with no illegal act, and the corporation is the only one at fault, in exceeding its corporate powers by making the express contract. The plaintiff is not seeking to enforce that contract, but only to recover his own money, and prevent the defendant from unjustly retaining the benefit of its own illegal act. He is doing nothing which must be regarded as a necessary affirmance of an illegal act.' The decision of this court in Hitchcock v. City of Galveston, 96 U. S. 341, 350, 24 L. Ed. 659, 662, covers the very point. There a recovery was allowed for the value of the benefit conferred upon the municipal corporation, notwithstanding, and indeed for the reason, that the contract to pay in bonds was held to be illegal and void. 'It matters not,' said the court, 'that the promise was to pay in a manner not authorized by law. If payments cannot be made in bonds, because their issue is ultra vires, it would be sanctioning rank injustice to hold that payment need not be made at all. Such is not the law.'"

In the case of Read v. City of Plattsmouth, 107 U. S. 568, 2 Sup. Ct. 208, 27 L. Ed. 414, it appears that the city of Plattsmouth, a city of the second class, had issued its bonds in the amount of $25,000; the same being $10,000 in excess of the limit created by statute. These bonds were sold, and the proceeds applied to the erection of a high school building. The legislature of Nebraska subsequently passed a curative act providing that "all bonds heretofore issued by any city of the second-class in good faith for the erection of or to procure the means for erecting a high school building within such city * * * shall be legal and valid." The primary question involved in the case was as to the validity of this last-mentioned act of the legislature. The supreme court held the act to be valid, predicating its decision upon the principle that although the bonds were in fact void, because in excess of the statutory limit, yet, as the city of Plattsmouth had received their proceeds, it was bound to make restitution, and accordingly held that the legislation in question acted upon the remedy, and not upon the rights of parties; and in making this ruling the supreme court announced principles which are applicable to the present case. Mr. Justice Matthews, in delivering the opinion of the court, said:

"In the present case the statute in question does not impose upon the city of Plattsmouth, by an arbitrary act, a burden without consent and considera-

tion. On the contrary, upon the supposition that the bonds issued as to the excess over $15,000 were void because unauthorized, the city of Plattsmouth received the money of the plaintiff in error, and applied it to the purpose intended, of building a school house on property, the title to which is confirmed to it by the very statute now claimed to be unconstitutional; and an obligation to restore the value thus received, kept, and used immediately arose. * * * As the city of Plattsmouth was bound by force of the transaction to repay to the purchaser of its void bonds the consideration received and used by it, or a legal equivalent, the statute which recognized the existence of that obligation, and, by confirming the bonds themselves, provided a medium for enforcing it according to the original intention and purpose, cannot be said to be a special act conferring upon the city any new corporate power."

In the case of Hedges v. Dixon Co., 150 U. S. 182, 14 Sup. Ct. 71, 37 L. Ed. 1044, the principle announced in Read v. City of Plattsmouth, supra, was fully recognized and approved; and after referring to the prior adjudications of the court, consisting in part of the authorities hereinbefore referred to, the court said:

"The circumstances and conditions which gave the holders of the bonds an equitable right in those cases to recover from the municipality the money which the bonds represented do not exist in the case now under consideration, where the county received no part of the proceeds of the bonds, and no direct money benefit, but merely derived an incidental advantage arising from the construction of the railroad, upon which advantage it would be impossible for the court to place a pecuniary estimate."

The principles announced in the foregoing cases are also further recognized or applied in the following: City of Parkersburg v. Brown, 106 U. S. 487, 1 Sup. Ct. 442, 27 L. Ed. 238; City of New Orleans v. Clark, 95 U. S. 644, 24 L. Ed. 521; Hitchcock v. City of Galveston, 96 U. S. 341, 24 L. Ed. 659; Travelers' Ins. Co. v. City of Johnson City, 40 C. C. A. 58, 99 Fed. 633, 49 L. R. A. 123.

The case now under consideration by us shows ample power to create the original indebtedness in evidence of which the unauthorized and void bonds in question were issued, and also shows that the money derived from the sale of these bonds, to the full measure of their face value, was received and employed by the school district for the purpose originally and lawfully intended, and that the district has been for a long time, and now is, enjoying the advantage of a school building constructed with the money so secured. These facts, in our opinion, bring the present case squarely within the principles laid down in the long line of decisions hereinbefore referred to, and, by the authority of those decisions, entitle the plaintiff in error to recover in this action. The case of City of Parkersburg v. Brown, supra, is authority for his recovery, notwithstanding the fact that his assignor actually paid the money to the school district for the bonds in question. The court holds in the last-cited case that the holder of the bonds, who purchased them from the original taker, succeeds to the same right of recovery on the implied obligation which the original purchaser from the municipality enjoyed.

This disposes of the main question in the case, namely, that the complaint stated a cause of action.

It necessarily follows from the principles already announced that the adjudication in the prior action as to the validity of the bonds

themselves is not res adjudicata of the question involved in the present case.

It is next contended that the remedy of the plaintiff is barred by the statute of limitations. The statute of Colorado requires that "all actions of assumpsit or on the case, founded on any contract or liability express or implied shall be commenced within six years next after the cause of action accrued." Mills' Ann. St. § 2900. The complaint, which, for the purposes of this case, must be taken to be true, shows that the bonds in question were executed July 1, 1892; that interest was paid thereon in accordance with the promise found in the coupons attached to the bonds on January 1 and July 1, 1893; that defendant in error failed to pay the coupons maturing January 1st and July 1st of the years 1894, 1895, 1896, and 1897; that a special tax was duly assessed and levied for the purpose of paying all interest coupons maturing on the bonds during the years 1894, 1895, and 1896; that the same remained a lien and charge upon the taxable property in the district until after the suit was instituted on the coupons in November, 1897; that during these years the school district repeatedly promised to pay the coupons representing the interest maturing in 1894, 1895, 1896, and 1897; that, because of a failure to keep the promises so made, suit was instituted November 29, 1897, to recover on the past due coupons. The present suit was instituted April 16, 1900,—more than six years after the bonds were purchased, but less than six years after the assessment, levy, and promises aforesaid were made. Plaintiff avers in his complaint that he had no intimation that the school district intended to repudiate its obligation on the bonds and coupons until its answer was actually filed, repudiating the same, and that nothing was done in the way of such repudiation until that time. The foregoing facts amount, in our opinion, to an election on the part of the district to recognize, at least until it filed its answer, the bonds and coupons as valid obligations. It not only treated them as such by the significant act of levying a tax for their payment, but by repeatedly promising to pay the same. The legal as well as the highly moral obligation to pay interest on the money borrowed was such as fully warranted the district in recognizing the coupons as valid and binding obligations. As long as the district so recognized the same, and elected to treat them as legal obligations, we know of no reason requiring the plaintiff to take any steps to rescind the contract, or obligating him to resort to the courts to enforce the implied obligation. It would be a harsh and thoroughly impracticable rule to establish that the holder of a claim against a municipality is bound by any consideration of statutes of limitations to take steps to rescind an express contract to pay the same, as long as the municipality itself recognizes such express contract as a valid and binding obligation. The effect of such a rule would be to permit the municipality to lull the holders of its obligations into inaction, and thereby, taking advantage of its own wrong, deprive them of a valuable right. It results, in our opinion, that plaintiff in error had a lawful right to institute suit to recover upon the implied obligation at any time within six years after the district repudiated the express obligation. We think

this conclusion is supported by the following authorities: Chapman v. Douglas Co., supra; Merrill v. Town of Monticello (decided by the circuit court of appeals for the Sixth circuit) 18 C. C. A. 636, 72 Fed. 462; Morton v. City of Nevada (C. C.) 41 Fed. 582; Id., 3 C. C. A. 109, 52 Fed. 350; Everett v. School Dist. (C. C.) 102 Fed. 529; Ætna Life Ins. Co. v. Lyon Co. (C. C.) 82 Fed. 929; Id. (C. C.) 95 Fed. 325.

It follows from the conclusions already reached that the trial court erred in sustaining the demurrer to the complaint and rendering a judgment in favor of the defendant. The judgment must accordingly be reversed, and the cause remanded for a new trial.

THAYER, Circuit Judge, dissents.