## BOARD OF COM'RS OF KEARNY COUNTY, KAN., v. IRVINE.

### SAME v. COFFIN et al.

(Circuit Court of Appeals, Eighth Circuit. November 23, 1903.)

Nos. 1,819, 1,820.

1 SUBROGATION—HOLDERS OF VOID MUNICIPAL BONDS.
  Bona fide purchasers, in open market, for full value, of county bonds issued in payment of outstanding warrants, which were surrendered to the county and canceled, where such bonds have been adjudged void for want of power in the county to issue the same, are entitled to be subrogated in equity to the rights of the original warrant holders.

2. JURISDICTION OF FEDERAL COURTS—SUIT BY ASSIGNEE—COUNTY WARRANTS.
  County warrants payable to bearer are choses in action made by a corporation, and under section 1 of the judiciary act of March 3, 1887, c. 373, 24 Stat. 552, as amended by Act Aug. 13, 1888, c. 866, 25 Stat. 433 [U. S. Comp. St. 1901, p. 509], a holder thereof who is a citizen of another state may maintain an action against the county to recover thereon in a federal court, regardless of the citizenship of the original holders.

3. EQUITY JURISDICTION—SUIT TO ENFORCE CANCELED WARRANTS.
  Equity has jurisdiction of a suit by a holder of void county bonds, issued in payment of warrants which were surrendered and canceled and destroyed by the county, to rescind the agreement by which such cancellation was effected, and to enforce payment of the warrants by the county.

4. LIMITATION—VOID COUNTY BONDS—ACTION ON ORIGINAL CONSIDERATION.
  Limitation does not begin to run against a suit by a holder of void county bonds, issued in exchange for outstanding warrants, to rescind the transaction and enforce the warrants, until the bonds are repudiated by the county.

5. EVIDENCE—PUBLIC RECORDS.
  A decree will not be reversed because the trial judge excluded from consideration a public record on the ground that it was entirely untrustworthy, where it showed erasures and alterations affecting the matters in issue which were unexplained; nor for the exclusion of another book, also offered as a public record, but which was not identified as such by a public custodian, nor produced by him, but by a private person who had been in possession of it for a number of years, and had taken it from the state.

6. APPEAL—REVIEW—FINDINGS OF FACT.
  Findings of fact by a trial court in an equity case are presumptively correct, and will not be disturbed on appeal unless it appears that some serious mistake was made in the consideration of the evidence.

7. COUNTY WARRANTS—VALIDITY—BURDEN OF PROOF.
  In the absence of an assessment fixing the taxable value of county property at the time warrants were issued, they are presumptively within the power of the county to contract and valid, and the burden rests on the county to establish the contrary for the purpose of avoiding liability thereon.

8. APPEAL—MATTERS REVIEWABLE—RECORD.
  Where a ruling excluding evidence appears only from the opinion of the trial court, it not being shown by the record that the evidence was offered and rejected, and an exception reserved, such ruling is not reviewable on appeal.

9. COUNTY WARRANTS—IMPEACHMENT—BURDEN OF PROOF.
  Where county warrants have been issued many years, in order to defeat recovery thereon on the ground that they were unauthorized or

¶ 2. Diverse citizenship as ground of federal jurisdiction, see notes to Shipp v. Williams, 10 C. C. A. 249; Mason v. Dullagham, 27 C. C. A. 298.

126 F.—44

fraudulent, the burden rests on the county to show by convincing proof that they were all void, or, if not, to what extent they were without consideration.

**10. SAME—EXCESSIVE PAYMENT FOR PROPERTY.**

Warrants issued by a county in payment for property furnished, having a face value exceeding the cash value of the property by the difference between the face value and market value of the warrants, are invalid to the extent of the excessive payment.

Appeals from the Circuit Court of the United States for the District of Kansas.

These are two equity cases of a like character that were tried in the lower court at the same time, by the same counsel, upon substantially the same state of facts, and which present the same questions of law for determination on appeal. On August 14, 1893, the bill of complaint in case No. 1,820 was filed by Coffin, Stanton and Street, composing the firm of Coffin & Stanton, while the bill in case No. 1,819 appears to have been filed on September 28, 1893. For convenience, case No. 1,820 will be termed the Coffin case, and case No. 1,819 the Irvine case.

In the Coffin case the allegations were, in substance, as follows: That on August 1, 1888, one D. P. Doak was the holder and owner of some 65 county warrants, amounting to about $35,000, which had been theretofore issued by Kearny county, Kan., and that on said date the county, proceeding under the statute laws of the state of Kansas, undertook to refund its outstanding indebtedness; that it accordingly issued and delivered to said Doak 35 refunding bonds, each for the sum of $1,000, bearing interest at the rate of 6 per cent., and payable August 1, 1908; that in exchange for said bonds the said Doak surrendered and delivered to the county all of the county warrants aforesaid which he thus owned and held, and that the county, through its proper officers, caused said county warrants to be canceled; that the refunding bonds so received by Doak were thereafter sold and delivered to the Municipal Investment Company of the City of Chicago, which company thereafter, in January, 1889, in turn sold and delivered said bonds, for value, to the complainants, composing the firm of Coffin & Stanton; that said bonds, although they appeared upon their faces to be in' all respects valid, were in fact void, having been issued without authority of law; and that they were adjudged to be invalid by this court in the case of Coffin v. Kearny County, 6 C. C. A. 288, 57 Fed. 137. In consequence of these facts the complainants averred that the consideration for the surrender and cancellation of the warrants had utterly failed, and they prayed that it might be decreed that they were entitled to be subrogated to all the rights, both at law and in equity, which were possessed by Doak at the time he surrendered his warrants and received therefor void bonds.

In the Irvine case the same allegations, in substance, were made, and the same relief was prayed for. In that case, however, the warrants which had been exchanged, as the bill charged, for void refunding bonds, amounted in the aggregate to $11,500, and bonds to that amount were issued in exchange therefor. In the Irvine case it was also charged that the warrants that had been exchanged for void bonds were issued in payment for necessary supplies furnished to the county, and that a part, if not all, of the warrants thus funded, were owned at the date of their surrender and cancellation by George W. Crane & Co. In all other respects the bills of complaint in the two cases were practically identical. Demurrers were filed in behalf of the defendant county to both of the bills, but the demurrers were overruled in August and September, 1896, by Foster, district judge for the District of Kansas, and thereafter answers were filed to the respective bills, setting up substantially the same defenses.

The answers to the respective bills contained the following pleas, in substance: First, that the Circuit Court of the United States for the District of Kansas, in which the bills were filed, had no jurisdiction of the controversy, because the warrants referred to in the bills of complaint were issued to persons who were at the time citizens and residents of the state of Kansas;

second, that all of the warrants referred to in the bills of complaint were illegal and void because no account showing the items of service rendered or supplies furnished to the county, verified by affidavit, was filed and presented to the board of county commissioners prior to the issuance of the warrants, as ought to have been done, under the laws of Kansas; third, that the warrants referred to in the bills of complaint were illegal and void because prior to the issuance thereof the board of county commissioners had issued warrants for a greater amount than the total amount of taxes levied upon the property of the county to defray the current expenses of the county for the year 1888, during which year the warrants were alleged in the answers to have been issued; and, fourth, that the warrants referred to in the bills of complaint, if issued at all, were illegal and void because they were issued and made a charge against the county fund before there had been any assessment of the taxable property of the county for the purpose of taxation, and that the warrants were also issued for expenses of the county for the current year, which were largely in excess of 1 per cent. upon the taxable value of all county property, and that the value of all taxable property in the county, at the usual rate of assessment, during the year when the warrants were issued, did not exceed the sum of $934,160. Certain special defenses were also pleaded to some of the warrants referred to in the bills of complaint, which tended to show that such warrants had been fraudulently issued either without any consideration received by the county, or for an amount in excess of what was actually due from the county to the warrant holder.

Before the cases were tried the parties thereto entered into stipulations whereby the following facts were conceded to be true: In the Coffin case, that on August 27, 1888, the board of county commissioners of the county of Kearny, at a regular meeting of the board, adopted a resolution that the matured and maturing indebtedness of the county, as evidenced by warrants then outstanding, which were bearing interest at the rate of 7 per cent., be refunded into 6 per cent. bonds, pursuant to chapter 50 of the laws of Kansas for the year 1879; that the chairman of the board and the county clerk be instructed to execute refunding bonds for the purpose aforesaid, and to cause them to be delivered to any person upon the surrender of an equal amount of county indebtedness; that the treasurer of the county, upon receipt of the evidence of such indebtedness, and upon delivery of refunding bonds, be directed to mark the evidence of such indebtedness as paid in full; that in pursuance of such resolution the chairman of the board and the county clerk executed refunding bonds of the county, which were dated August 1, 1888, to the amount of $35,000; that warrants of the county of Kearny, payable to the persons therein named or bearer, to the amount of $35,000, theretofore issued and outstanding, were surrendered to the county in exchange for the aforesaid bonds, and that upon receipt of such warrants they were duly marked "Paid"; that the complainants, composing the firm of Coffin & Stanton, on January 10, 1889, bought the aforesaid refunding bonds to the amount of $35,000 in good faith, paying par therefor, and without notice of any irregularities or defects therein except such as might be imparted by the bonds themselves and the general laws of the state of Kansas.

In the Irvine case a similar stipulation was made and filed, but the resolution of the board of county commissioners, in pursuance of which the refunding bonds which figured in that case were issued, appears to have been adopted on October 1, 1888, instead of August 27, 1888. The two resolutions, however, were identical in form, and it was stipulated in the Irvine case that warrants of the county to the amount of $11,500 had been exchanged for refunding bonds on October 1, 1888; that the warrants so exchanged, when received, were indorsed "Paid"; and that on February 26, 1889, Louise M. Irvine, the complainant in case No. 1,819, had bought said refunding bonds to the amount of $11,500 in good faith, upon the open market, paying full value therefor, and without notice of any irregularities or defects in the bonds, save such as was imparted by the bonds themselves and the general laws of the state of Kansas.

The cases were tried below upon the aforesaid stipulations and other evidence which was adduced at the trial, and at the conclusion of the trial the court below entered decrees in favor of the complainants, granting them the

relief prayed for, and in connection therewith filed an elaborate opinion. Vide 114 Fed. 518. The cases are before this court on appeals from those decrees.

Milton Brown (Wash Adams, on the brief), for appellant.

W. H. Rossington and Clifford Histed (Charles Blood Smith and F. P. Lindsay, on the brief), for appellees.

Before SANBORN. THAYER, and VAN DEVANTER, Circuit Judges.

THAYER, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The first and one of the most important questions which arises in this case is whether the complainants below are entitled to be subrogated to the rights of the warrant holders who exchanged county warrants for the void bonds of Kearny county, which the complainants subsequently purchased on the market for value, believing them to be valid. In behalf of the county of Kearny it is strenuously urged that no such right of subrogation exists or can be enforced, and in support of this contention reliance is placed on the following cases: Ætna Life Ins. Co. v. Middleport, 124 U. S. 534, 8 Sup. Ct. 625, 31 L. Ed. 537; Litchfield v. Ballou, 114 U. S. 190, 5 Sup. Ct. 820, 29 L. Ed. 132. But the cases cited do not appear to be fully in point. In the first of these cases (Ætna Life Ins. Co. v. Middleport) a village in Illinois had made a donation to a certain railroad company, which was to be raised by a tax on the property of the inhabitants of the town. It issued bonds payable to bearer for such donation, and the railroad company accepted them and sold them to the Ætna Life Insurance Company. The bonds so issued were held to be utterly void, having been issued without authority of law, whereupon the purchaser of the bonds, claiming that by the purchase thereof it had paid the donation of the town to the railroad company, insisted that it should be subrogated to the rights of the company against the town. The Supreme Court of the United States held, on this state of facts, distinguishing the case from Louisiana v. Wood, 102 U. S. 294, 26 L. Ed. 153, that the right of subrogation could not be invoked, the bonds being utterly void. In the second case (Litchfield v. Ballou) it appeared that the town of Litchfield had issued bonds for the purpose of aiding in the construction of a system of waterworks. The bonds so issued turned out to be utterly void, having been issued without authority of law. The bonds having been sold in the open market, one of the purchasers of the bonds brought a suit in equity against the town upon the theory that, although the bonds were void, the town was liable to him for the money which he had paid therefor. The Supreme Court held in that case that the bill so filed was without equity, and that, if the plaintiff had any right of action against the city for money had and received, the right must be enforced by an action at law, and that a court of equity had no jurisdiction in the premises. The case at bar in its essential features, is very different. The county of Kearny had issued certain county warrants, which were outstanding and in the hands of certain persons. Presumptively, these warrants had been issued for services rendered to the county, or for supplies

furnished to it, and were valid obligations of the county, such as it had a right to contract. Presumptively, these warrants were founded upon a valuable consideration. At a certain time the county proposed to give obligations of a different sort, to wit, funding bonds, in exchange for the warrants. The proposition was accepted, the warrants were surrendered to the county and canceled, and bonds to an equal amount were issued to the holders of the warrants in exchange therefor. It so happened that the bonds so issued were void because the time had not arrived when the county could lawfully issue bonds. It had not been organized for one full year before the refunding bonds were issued, and the laws of the state provided that "no bonds of any kind shall be issued by any county * * * within one year after the organization." Coffin v. Board of Commissioners of Kearny County, 57 Fed. 137, 6 C. C. A. 288. The void bonds so issued were placed upon the market, and were purchased by the complainants in good faith. It admits of no controversy, we think, that, if the bonds were in the hands of the original warrant holders, they could surrender them to the county, and insist upon the payment of the warrants which have now been canceled and destroyed, since the delivery by a debtor to his creditor of a void note or bond in payment of an existing indebtedness does not operate as payment, but leaves the debt undischarged. In the forum of equity the purchasers of these void bonds have the same rights as the original warrant holders; that is to say, because the bonds were void. a court of equity will treat the sale of the bonds to an innocent purchaser as tantamount to a sale and assignment of the warrants for which the bonds were issued, and of all rights arising thereunder. This view is fully sustained by the decision of this court in Geer v. School District No. 11, 49 C. C. A. 539, 547, 548, 111 Fed. 682, and by the decision in Parkersburg v. Brown, 106 U. S. 487, 503, 504, 1 Sup. Ct. 442, 27 L. Ed. 238. In the latter case it appeared that the city of Parkersburg had loaned its bonds to the amount of $20,000 to a certain individual, as it supposed it had a right to do under existing laws; and, to secure the payment of said bonds by the borrower, it had taken a deed of trust on certain property belonging to the borrower. He having failed to pay the interest on the bonds, or the principal thereof, as he had engaged to do, the city took possession of the mortgaged property, and refused to pay its bonds which it had loaned to the borrower. The bonds at that time had been sold, and were in the hands of a third party. In a suit brought by such third party against the municipality, it was held that although the bonds were void, and no recovery could be had thereon, yet by the purchase of the bonds the plaintiff had acquired all the rights of the person to whom the bonds were originally loaned, and, as he had the right to compel the municipality to account for the property which he had mortgaged to secure the payment of such void bonds, the purchaser of the bonds could assert and enforce the same right. See, also, Shirk v. Pulaski County, 4 Dill. 209, 214, Fed. Cas. No. 12,794.

We perceive no reason, therefore, why these complainants, who bought void bonds that were issued confessedly in payment of out-

standing warrants, which the county had recognized as valid by issuing the bonds, may not, on well-recognized equitable principles, assert that the sale of the bonds to them operated as an assignment of the warrants, and vested them with all the rights of the original warrant holders, when it was discovered that the bonds were utterly void and could not be collected.

Another contention on the part of counsel for the appellant is that inasmuch as the answers to the bills of complaint alleged that the warrants which the complainants below sought to enforce were originally issued to residents and citizens of Kansas, and because nothing more than a general replication was filed, it appeared that the federal court in which the bills were filed had no jurisdiction of the controversy. This point does not seem to be pressed with much confidence, and in any event we regard it as untenable. The stipulations show that the warrants in controversy were made by a corporation, and were payable to a named person or bearer. County warrants are certainly choses in action made by a corporation, and, when drawn payable to bearer, they are negotiable, in a certain sense, although negotiation does not cut off all equities of defense, and in that respect they are unlike negotiable promissory notes and bills of exchange. The judiciary act of March 3, 1887, c. 373, 24 Stat. 552, as corrected by the enrollment act of August 13, 1888, c. 866, 25 Stat. 433 [U. S. Comp. St. 1901, p. 508], permits the assignee of choses in action payable to bearer, and made by a corporation, to sue thereon in the federal courts, if he is not a citizen or resident of the state where they were issued, and the jurisdiction of the federal courts in such cases has frequently been upheld. Board of Commissioners of Kearny County v. McMaster, 15 C. C. A. 353, 68 Fed. 177; Aylesworth v. Gratiot County (C. C.) 43 Fed. 350, 355; Wilson v. Knox County (C. C.) 43 Fed. 481. See, also, Board of Commissioners of Hamilton County v. Sherwood, 11 C. C. A. 507, 64 Fed. 103; Thompson v. Searcy County, 6 C. C. A. 674, 57 Fed. 1030. We think, therefore, that as the complainants below, by purchasing and paying for the void refunding bonds, had become the owners of the warrants in question, and as the warrants were choses in action issued by a corporation and made payable to bearer, they were entitled to maintain these actions in the federal court. Nor do we perceive that there is any force in the further suggestion of counsel for the appellant that the complainants below were not entitled to relief in equity, and that such rights, if any, as they possessed, could have been enforced by an action at law. When the bills were filed the warrants in question had been canceled and destroyed, and were no longer in existence. It was necessary, therefore, or at least the complainants were entitled to seek a rescission of the agreement in virtue of which the warrants had been ostensibly paid by the issuance and delivery to the warrant holders of void refunding bonds; and, when resort was had to a court of equity for that purpose, it was competent for the court, besides entering a decree rescinding the agreement and declaring the warrants to be still unpaid, to afford the complainants full relief in that proceeding, by ascertaining the amount due on the warrants and directing that it be paid.

The next point to be noticed is the plea of the statute of limitations, but that plea does not seem to be tenable, for the reasons stated at length in the opinion of the trial court. Vide 114 Fed. 521, 522. The period of limitation applicable to the cases is five years. One of these suits (the Coffin case) was commenced August 14, 1893, while the other (the Irvine case) was commenced September 28, 1893. It seems clear that the refunding bonds referred to in the Coffin case could not have been received in exchange for warrants until some time subsequent to August 27, 1888, because the resolution of the board of county commissioners under which the bonds were issued was not adopted until the latter date, so that the right of action to rescind the transaction accrued within less than five years before the bill to rescind was filed, while in the Irvine case the refunding bonds could not have been accepted in exchange for warrants until some time subsequent to October 1, 1888, since the resolution of the board of county commissioners authorizing the exchange was not adopted until the latter date, so that the right to have the exchange rescinded accrued in that case less than five years before the bill to rescind was filed. This court also held in the case of Geer v. School District, 49 C. C. A. 539, 548, 549, 111 Fed. 691, that where a municipality issued void bonds, receiving the money therefor, and subsequently paid interest thereon, the statute of limitations would not begin to run against a bill to rescind the transaction, or against an action brought to recover the money, until the municipality had repudiated its void obligations; and in the case at bar it does not appear that Kearny county repudiated its refunding bonds more than five years before these actions were commenced to rescind the transaction and recover the sum due on the warrants. Moreover, it is held in the state of Kansas (School District v. Bank, 63 Kan. 668, 66 Pac. 630) that the statute of limitations does not begin to run against county warrants until the county has provided a fund for their payment, and no such fund was ever provided to pay the warrants which are the subject of controversy in these actions.

This brings us to a consideration of the question whether any material error was committed by the trial court in excluding testimony which was offered in behalf of the appellant. With reference to this question it is to be observed that counsel for appellant, in preparing their brief, have utterly ignored rule 24 of this court, which requires counsel, when complaint is made on appeal of the exclusion of evidence, to quote in their brief "the full substance of the evidence admitted or rejected." The leading brief in these cases contains 445 pages of printed matter, of which 172 pages consist of the assignment of errors, which is printed in full in the brief as well as in the record. The record in the respective cases contains 547 pages of printed matter, of which 190 pages are devoted in each case to the assignment of errors. The brief contains no reference whatever to any page of the record where during the progress of the trial evidence of any sort was offered in behalf of the appellant and was excluded, nor does the brief quote or attempt to quote the substance of any such excluded testimony. We have rarely encountered a record which was made up more unskillfully, or one that was better calculated

to impose unnecessary labor on an appellate tribunal, than the records in these cases. It is only by a careful examination of hundreds of pages of testimony that we have been able to locate the evidence which counsel assert was erroneously excluded, and after locating it we have had even greater difficulty in determining whether it was in fact objected to or rejected, and whether an exception was properly saved, so as to bring the matter before this court for review. For these reasons alone we would be justified in declining to notice any of the assignments of error relating to the exclusion of evidence. We have ascertained, however, after a patient examination of the records, that in the course of the trial no ruling was made by the learned trial judge relative to the admissibility of any evidence which was offered in behalf of the county, at the time the evidence was offered. All of such testimony appears to have been received by the trial judge, and, as his opinion shows, to have been duly considered. The cases were heard together on the same evidence in the month of January, 1902, and were held under advisement until April 18, 1902, when a decision was announced in favor of the complainants. After the decision was announced, and probably in consequence of some remarks that were made by the trial judge in the course of his decision, a short bill of exceptions was presented to and signed by him, although these are equity cases. This bill of exceptions contains the following statement:

"Upon the court announcing that it sustained the complainants' several motions to exclude certain documentary and record evidence offered by the defendant, and the several parts thereof, the defendant then and there excepted to said ruling as to each and every part and portion thereof, and which exceptions were severally allowed by the court."

This, so far as we have been able to discover, is the only exception that was taken by the appellant on which it can, in any event, predicate any right to have this court review the action of the lower court in the matter of rulings upon testimony. This exception, it will be observed, does not in itself identify the documentary or record evidence which was offered by the appellant and excluded; nor do we find in either of the printed records, save in the assignment of errors, any motions to exclude documentary or record evidence that would serve to identify the documents or records to which the exception relates. But by referring to the transcript which was lodged in this court on appeal, we do find a motion to exclude certain evidence which appears to have been made by complainants' counsel on January 21, 1902, and a supplementary motion which appears to have been filed by them on February 24, 1902. These motions relate chiefly to a stubbook of Kearny township, marked "Exhibit Y," and "Commissioners' Journal No. One of Kearny County." These motions, taken in connection with the opinion of the trial court, enable us to identify the documentary and record evidence to which the aforesaid exception probably relates. Exhibit Y, last above referred to, contains the stubs of certain warrants which, as counsel claim, were issued by Kearny township, which afterwards became the county of Kearny. This stubbook was introduced for the purpose of identifying certain county warrants which were mentioned in the commissioners' jour-

nal, and for the purpose of showing upon what consideration they had been issued by the commissioners of Kearny county. It appears in the opinion of the trial judge that he examined both the commissioners' journal and Exhibit Y, but reached the conclusion after such examination that the journal was unreliable, because of manifest erasures and interlineations therein, and that Exhibit Y was not admissible in evidence, because it had not been kept in pursuance of the provisions of any statute of the state of Kansas, and had not been identified by any official of the township or county who should have had its custody, but was produced by a private person who claimed to have had possession of it for many years, and whose testimony in relation thereto the learned trial judge declined to credit. Vide 114 Fed. 523, 524. The trial court did not rule, as we construe its opinion, that the journal of the county commissioners was incompetent to show the proceedings of that body, because the journal was the only appropriate evidence to prove its proceedings. The effect of the ruling was that the journal in question was not entitled to credit as respects the particular issues of fact which arose in these cases, because it had evidently been tampered with or altered in material respects. It did hold that Exhibit Y was incompetent and should be excluded. In view of the state of the record, we have had some doubt whether it is the duty of this court to review on appeal the action of the trial court with respect to the commissioners' journal and the exclusion of Exhibit Y; but, conceding that it is our duty to review such action, we conclude that no material error was committed. Whether the commissioners' journal was entitled to any probative force as respects the particular issues of fact which arise in these cases, in view of the manifest interlineations and alterations therein, and what weight, if any, ought to be given to it in the determination of such issues, was a question for the trial judge to determine in the first instance, and this court cannot say that he committed a reversible error in declining to give it any weight in determining the issues of fact which he had to decide, if he was satisfied, as he appears to have been, that it was entirely untrustworthy and had been altered to meet the necessities of the case. Exhibit Y, we think, was properly excluded. Waiving the question whether it was a record which the law required to be kept, it certainly was not produced by an official custodian, and was not identified by such custodian as a public record in his possession. Besides, the fact that the person who produced the exhibit had had it in his possession for several years, and had taken it out of the state to places far distant from Kearny county, where it should have been deposited and kept if it was indeed a public record, and the mutilated appearance of the record when it was produced, and the facts alluded to by the learned trial judge affecting the credibility of the witness who produced it, all tended to discredit the exhibit, and were sufficient, in our judgment, to warrant a chancellor in rejecting it in a case where important rights were at stake. But even if the trial court erred in rejecting Exhibit Y, and if this court were prepared to so hold, we do not think that it contains evidence which, in connection with the other testimony in the case, would have served to alter the conclusion which was eventually reached by

the trial court. The exhibit in question was offered in evidence for the purpose of establishing the fact that certain county warrants which had been exchanged for funding bonds were issued fraudulently or without consideration. It was offered for no other purpose than to establish these facts. We have examined the exhibit, and after such examination feel constrained to hold that it would not have aided materially in the establishment of the facts which it was intended to establish, or to such an extent as would warrant us in saying that the exclusion of the exhibit necessitates a reversal of the judgment, or a modification thereof.

A further and final contention on the part of the appellant is that the trial court erred in finding that the appellant had failed to prove that the warrants in controversy, being those that were exchanged for refunding bonds, were invalid because they represented debts that were contracted after the county of Kearny had exhausted its power to contract debts (vide Gen. St. Kan. 1901, § 1853); also that the trial court erred in finding that the appellant had failed to prove that the warrants in question were fraudulently issued. The findings thus challenged are findings of fact, and the rule is well established in this court by repeated decisions that the conclusion reached by a chancellor on a question of fact will be presumed to be correct, and will not be disturbed on appeal unless it appears that some serious mistake was made by the chancellor in the consideration of the evidence on which the conclusion was based. Even in chancery cases the conclusion of the lower court as respects questions of fact is entitled on appeal to great weight, and will not be reversed unless the complaining party succeeds in showing very clearly that it is erroneous and ought to be overruled. Snider v. Dobson, 21 C. C. A. 76, 74 Fed. 757, and cases there cited; Thallmann v. Thomas, 49 C. C. A. 317, 111 Fed. 277; The Order of United Commercial Travelers of America v. McAdam (C. C. A.) 125 Fed. 358. In the case at bar we are unable to say that the appellant has shown to our satisfaction that the findings aforesaid, of the trial court, are erroneous. The answers to the respective bills of complaint alleged that the warrants in controversy, "if issued at all, were made and issued  *  *  *  before there had been any assessment of the taxable property of said county for the purpose of taxation, and before there had been any levy of taxes for county purposes."

In the absence of an assessment fixing the taxable value of county property for the purpose of taxation, it is obvious that the burden of showing an overissue of warrants—a burden which rested upon the appellant—was not one that could be easily discharged, since an assessment for the purpose of taxation, regularly made, was the only proper test by which to determine when the debt-contracting power of the county became exhausted, and all debts that were contracted before an assessment was made were presumptively valid. Childs v. City of Anacortes (Wash.) 32 Pac. 217; State v. Cornwell (S. C.) 18 S. E. 184. See, also, State v. Common Council (Wis.) 71 N. W. 86. It is also manifest that the persons to whom the warrants in suit were originally issued must have encountered the same difficulty, for, in the absence of an assessment for the purpose of taxation, they

had no certain means to determine whether, when the warrants were issued, the county had or had not exhausted its power to contract debts. Moreover, as the limitation which the statute of Kansas imposed on the power of the county to contract debts related to those contracted for "current expenses," and did not, in terms, apply to extraordinary expenses such as a newly created county like the county of Kearny might be compelled to incur, it became the duty of the appellant to show that the warrants in suit were issued for "current expenses," as well as to show what the taxable value of the county property was, and what debts the county had already contracted when each warrant was issued. The trial court held that this burden had not been discharged "with any degree of certainty," and in that view we feel compelled to concur after a patient examination of the record.

In his opinion the learned trial judge observed that the appellant had attempted to establish the taxable value of county property when the warrants in suit were issued by other evidence than the assessment roll, such other evidence being, as it seems, oral testimony of the contents of a certain report that had been made to the Governor of the state before the county of Kearny was organized; also a copy of a certificate that had been made by the county clerk, and filed by him in the office of the State Auditor, long after the warrants had been issued, to secure the registration of the refunding bonds; and a biennial report of the State Auditor of Kansas for the year 1888. This other evidence the trial court, as shown by its opinion, deemed incompetent to establish the assessed value of county property at the time the warrants were issued, for reasons which are stated at length in its opinion. Such evidence was accordingly rejected. This ruling, however, as respects the testimony in question, is shown by the opinion of the trial court only. The record proper does not disclose that such evidence was offered during the course of the trial and was excluded, and that an exception was reserved. Indeed, were it not for the assignment of errors and the opinion of the trial court, it would not appear that any such proof as that last referred to was tendered during the progress of the trial. We are of opinion, therefore, that the question whether the proof was admissible to establish the assessed value of county property in the absence of a regular assessment is not before us for review on the present appeal; and, even if such question was before us for consideration, we should be strongly inclined to hold that the reasons assigned by the trial court for rejecting the evidence (vide 114 Fed. 526, 527) were sufficient to justify its action.

We are furthermore of opinion that, upon all the evidence offered by the defendant, the trial court was right in holding, as it did, that the appellant had failed to prove with the necessary certainty that the warrants which were exchanged for refunding bonds were fraudulently issued, and in holding that the bills could not be dismissed on that ground. We agree with the trial judge that the evidence strongly tended to show that the commissioners of Kearny county, in the administration of the affairs of the county during the period when the warrants in controversy were issued, were guilty of great

extravagance; that the proceedings of the board were conducted at times with great irregularity; and that the commissioners may have acted fraudulently on some occasions in allowing demands against the county which they knew to be excessive. It is quite probable, we think, that they allowed some demands against the county, and issued warrants therefor, that ought not to have been issued; and very likely the county officials, or some of them, shared in the profits of such transactions, and were guilty of gross violations of official duty. But at this late day it is impossible, on the strength of such evidence as these records contain, to say with any degree of certainty, except as respects certain warrants, aggregating $6,337.52, that were issued to George W. Crane & Co., how many, if any, of the warrants involved in this controversy are utterly void because issued without any consideration, or how many of them, although issued in payment of valid debts, were issued for sums in excess of such debts, or how much in excess of such debts. We have been unable to reach a conclusion on these issues. Presumptively, all of the warrants are valid, and represent obligations of the county that had been lawfully contracted. This presumption accompanied the warrants when they were issued, and it is strengthened by the fact that some time after they were issued the county, recognizing them as valid, resolved to fund them into bonds payable to bearer, and did issue bonds in exchange for the warrants, which bonds immediately passed into the hands of innocent purchasers for value. The burden accordingly rests upon the county in this proceeding of showing by convincing proof that the warrants are all void, or, if they were not all void, of showing to what extent the recovery thereon should be reduced because some warrants were issued for a sum in excess of what was justly due from the county to the warrant holder. It has failed, we think, to prove that the warrants were all void, and it has likewise failed to show, with any degree of certainty, to what amount less than the face of the warrants the recovery should be reduced because the original warrant holder did not pay a full or adequate consideration therefor. Some of the warrants which are involved in the Coffin case appear to have been issued in exchange for warrants previously issued by Kearny township, and there is considerable testimony tending to impeach the validity of some of the township warrants, while others were doubtless valid. But we have been unable to ascertain definitely, from the evidence contained in the record, that any particular county warrant was issued in exchange for any particular township warrant, and that such township warrant was issued without consideration or for a partial consideration. No court or jury, we think, on the evidence contained in this record, would be able to say with any degree of confidence to what extent, if any, the indebtedness of the county was fraudulently exaggerated by the issuance of warrants; and, in the absence of the necessary evidence to establish this fact with certainty, the legal presumption in favor of the validity of all of the warrants, ought to prevail. Nor is there anything unjust or inequitable in this result. If excessive burdens were imposed on the people of the county, the wrong was committed by their own agents, and the county may as

well be left to bear the loss as the innocent purchasers of its securities, who were innocent of any wrongdoing.

In the Irvine case, as above suggested, it does appear, we think, with reasonable certainty, that warrants amounting on their face to $6,337.52, which were exchanged for refunding bonds, were issued in payment for supplies furnished to the county that were worth 40 per cent. less than the face of the warrants, and this fact appears to have been known to the board of county commissioners, as well as to the warrant holders, when the warrants were issued. These warrants, as it seems, were issued to an amount which was considerably in excess of the value of the property received by the county, because its warrants were at the time selling at a discount of 40 per cent.: the intention being to enable the warrant holder, by a sale of the warrants in the market, to realize in cash the actual value of the supplies which he had furnished. It does not appear that in this transaction a fraud was intended, but the act was unauthorized by law, and there should be no recovery on these warrants for a sum in excess of the value of the supplies which were received by the county. Shirk v. Pulaski County, 4 Dill. 209, Fed. Cas. No. 12,794.

It results from what has been said that the decree in the Coffin case (No. 1,820) should be affirmed, and it is so ordered. The decree in the Irvine case (No. 1,819) should be modified by deducting from the decree as rendered by the Circuit Court the sum of $3,882.29. This sum represents the discount, to wit, $2,535, which the county is justly entitled to on account of the warrants issued to George W. Crane & Co., and interest thereon at the rate of 7 per cent. from the time the bill was filed until the decree was entered. Deducting the sum aforesaid, $3,882.29, from the sum of $22,405.39, the amount for which a decree was originally entered in the Irvine case, leaves a balance due on the warrants of $18,523.10, for which sum only the decree in the Irvine case will be affirmed.