## FERNALD v. TOWN OF GILMAN.

(Circuit Court, S. D. Iowa, Central Division.   June 25, 1903.)

### No. 3,685.

1. MUNICIPAL BONDS—VALIDITY—EFFECT OF ERRONEOUS RECITAL.

An erroneous recital in municipal bonds that they were issued under a certain legislative act, which did not in fact authorize their issuance, is mere surplusage, and does not render the bonds invalid.

2. SAME—POWERS OF TOWN.

An incorporated town in Iowa, having power to become indebted for various purposes, which borrowed money for a lawful corporate use, had power to issue an evidence of its indebtedness, and where it issued to the lender its negotiable bonds therefor, on which it paid interest until their maturity, it is liable on such bonds in the hands of the lender or his assignee for the amount so borrowed, whether or not it had statutory power to issue negotiable obligations.

3. STATUTE OF FRAUDS—CONTRACT NOT TO BE PERFORMED WITHIN ONE YEAR.

A parol contract by which a town borrowed money and agreed to repay it at the end of 10 years is not void under the Iowa statute of frauds, as construed by its Supreme Court, on the ground that it was not to be performed within one year, when it was to be performed by the lender on his part at once, and was performed by his paying over the money.

4. MUNICIPAL CORPORATIONS—LIABILITY FOR BORROWED MONEY—INVALIDITY OF BONDS.

One who in good faith lent money to a town to be used for a corporate purpose, taking its bonds therefor, is entitled to recover, in an action for money had and received, where the bonds are void for want of power in the town to issue the same.

At Law.   On demurrer to petition.

C. M. Waterman and J. R. Lane, for plaintiff.
Thomas A. Cheshire and J. P. Lyman, for defendant.

McPHERSON, District Judge.   The plaintiff is a citizen of Florida.   The defendant is a citizen of Iowa, being a municipal corporation, an incorporated town, with the powers and responsibilities of such, under the laws of the state.

The petition, with an amendment, recites in seven counts the following facts:   The first count declares that July 1, 1888, the defendant executed and delivered to one William H. Fernald, for value received, its written obligation, with interest at 7 per cent., payable annually.   The following is a copy of the obligation:

"No. 1.                          State of Iowa.                          $500.00.

"Incorporated Town of Gilman, County of Marshall,

"For value received, promises to pay to William H. Fernald, or order, at the Bank of Gilman, Son & Co., New York City, on the first day of July 1898, the sum of

"Five Hundred Dollars,

with interest at seven cent per annum, payable semi-annually, on the first day of January and July in each year, on presentation and surrender of the interest coupon hereto annexed.

"This bond is issued by the incorporated town of Gilman, in accordance with the provisions of chapter 121 of the Acts of the Sixteenth General As-

---

¶ 4. See Municipal Corporations, vol. 36, Cent. Dig. § 1992.

sembly of Iowa [Laws 1876, p. 109], and an order of the Town Council on the seventh day of May 1888.

"In testimony whereof, the incorporated Town of Gilman, by its Town Council has caused this bond to be signed by its Mayor and countersigned by the City Clerk, this first day of July 1888.

"J. A. Ward, Clerk.                                     S. G. Seager, Mayor."

"Bond No. 1.                                                 $17.50.

"The Incorporated town of Gilman, Iowa, on the 1st, day of July 1898, will pay to the bearer Seventeen Dollars and Fifty Cents for six months' interest on this bond.                              S. G. Seager, Mayor.

                                                  "J. A. Ward, Clerk."

Afterwards plaintiff became the owner thereof, by virtue of the following indorsement on the back thereof:

"For value received I hereby sell, assign, transfer and set over to Louis P. Fernald, or order within bond and all claims I may have for money due me from the town of Gilman, Iowa.                       William H. Fernald."

Plaintiff asks judgment for the principal, with interest from January 1, 1898, aggregating $675.

Counts 2, 3, 4, and 5 are on bonds in like form, with like indorsements. Count 6 alleges that July 1, 1888, William H. Fernald advanced and paid to the defendant, at its special instance and request, the sum of $2,500, with the mutual understanding and agreement with the mayor and council of defendant that said money was to be repaid to Fernald with interest, on demand, any time after July 1, 1898, which demand has been made, and which claim has been duly assigned to plaintiff.

Plaintiff presents count 7 by an amendment, alleging that July 1, 1888, William H. Fernald purchased from defendant five bonds of $500 each, issued by the defendant, and he paid therefor $2,500 in money, which money was received by the defendant and used for municipal purposes, and is still kept and retained by it. Copies of the bonds are annexed (being the same bonds as pleaded in the first five counts). After said bonds were so sold and delivered to William H. Fernald, the town of Gilman recognized and treated them as valid municipal obligations, and regularly paid the interest thereon, as therein provided, up to July 1, 1898, when the bonds, as well as the last interest coupons, matured. And up to said date of July 1, 1898, by no act or expression of the said municipality, or its officers, representatives, or inhabitants, had plaintiff, or his assignor, William H. Fernald, been given any reason to believe, nor did they nor either of them believe, that the obligation purporting to be incurred by said municipality, by the terms of said bonds and each of them, would not be kept and performed fully and to the letter by the said town. On the day the bonds matured (July 1, 1898) the defendant refused to pay said bonds or either of them, or the interest thereon, and still refuses to pay them or any part thereof, although demand has been made, and the defendant, and its officers and constituted authorities, for the first time made, and still make, the claim that said bonds and coupons are invalid and void. Thereafter said bonds and the money paid therefor were assigned to plaintiff. The claim in this count is for the same money, based on the same transaction, as set out in count 6 of

the original petition. The prayer is for a judgment for $2,500, with 6 per cent. interest from July 1, 1898, and costs.

The defendant has demurred to the first five counts of the petition, on the grounds: That it appears from the terms of the bonds they were issued pursuant to a certain statute of Iowa, which does not confer such authority upon a town; that when the bonds were issued the defendant did not have the power to issue negotiable bonds, and the attempt to do so was ultra vires and void. The defendant demurs to count 6, for the reason that the mayor and council had no authority to enter into such verbal agreement for money thus advanced to defendant; that such agreement of defendant is void, and it cannot be held liable thereon; that the defendant could not be holden on a verbal agreement to be performed July 1, 1898, 10 years after the agreement was made; that the alleged assignment did not transfer to plaintiff the said claim; that the alleged verbal agreement was not to be performed within one year, and therefore it falls within the Iowa statute of frauds. This demurrer is for determination.

In Iowa, we have cities with special charters, cities of the first class, cities of the second class, and incorporated towns. The defendant herein is of the last-named class. In some particulars, the powers, duties, rights, obligations, and liabilities are common to the four classes of the Iowa municipal corporations named. But in all the things stated are limited, and with incorporated towns the more so than with any of the other three. And persons dealing with them are charged with notice of such powers, and must so deal at their peril. From the petition it appears that in 1888 the town obtained from William H. Fernald $2,500 in money for its corporate use, and for which it issued and delivered its bonds, and on which for nine years it regularly paid the interest as agreed. Then the town denied its liability. In other words, it now repudiates the obligations. Common honesty and fairness, in the strongest terms, demand that it shall not keep that which it borrowed from another, but that it shall be compelled to refund it, unless there be some legal obstacle in the way. Repudiation is not the way Iowa, and most of its counties, cities, and towns, have gained their fame. Municipalities can only have credit and standing by being equally honest with other people, and refund that which they borrow. The only facts before the court are those stated in the petition. And from those facts it appears that William Fernald turned over to the town his money. The town requested the money, and obtained and used it for corporate purposes. Now it says it will keep the money. At the time, no officer and no citizen and no taxpayer protested or sought to prevent it. Then would have been an appropriate time to urge objections to the courts or otherwise. As fairness requires that the money thus received should be repaid, the question for determination is, is the city legally holden? I think it is, and shall briefly state my reasons.

Whether the writing signed on the back of every one of the five bonds is an assignment or an indorsement need not be considered, because, as to the matters pleaded in counts 6 and 7, the plaintiff takes not only by assignment, but took the bonds after maturity. Therefore I shall consider the entire case as though William H. Fer-

nald had never parted with the bonds, and as though he was plaintiff herein. And, first, as to the five counts declaring on the bonds. It is urged that, as the bonds recite they were issued in accordance with the provisions of chapter 121 of the Acts of the Sixteenth General Assembly, Laws 1876, p. 109, the bonds must be regarded as invalid if the statute cited did not authorize their issue; that is, if in fact, as agent, I have the power to act for another, and sign my principal's name to a note for a full consideration by him received, yet if I recite, not my power of attorney, but by mistake recite another paper, such mistake shall constitute a defense! This does not seem reasonable or logical to me. The mistaken words recited in the obligation should be regarded as surplusage. The statute recited in the bonds did not authorize their issue, it being with reference only to school districts, and not to incorporated towns. The recital was a mistake, and, so far as has been made to appear to the court, the mistake only evidences the harmless stupidity of some one. And such erroneous recital will be regarded as surplusage. Commissioners v. January, 94 U. S. 202, 24 L. Ed. 110.

It does not appear from the petition for what corporate purpose the city borrowed the money, but it does allege that the money was borrowed for its corporate use. And the question then is, could the town, July 1, 1888, have borrowed the money? The statutes then and now in force provide for a mayor and a board of councilmen or trustees. They have charge of the streets and bridges and sidewalks. There was also a town treasurer. Taxes were levied, collected, and disbursed. The town was liable for all injuries occasioned by defective streets, bridges, and walks. It could become indebted, and not only could, but must, discharge those debts. The Legislature provided, by chapter 57 of the Acts of the Sixteenth General Assembly, Laws 1876, p. 47, that towns could issue new securities for those outstanding of a negotiable form. A town had the power to build bridges, and it could raise money therefor by the issue and sale of its bonds to take up its prior obligations. This was so held in Mullarky v. Cedar Falls, 19 Iowa, 21. The court recognized that there was no express authority to build the bridge or negotiate its bonds therefor. But it held that the power to make streets included the power to connect the streets by the bridges. But the town gave a mortgage on the bridge to secure the bonds. The mortgage was decreed to be of too doubtful authority, especially as there was an adequate remedy at law on the bonds. "We refer to a remedy upon the bonds themselves, which we hold to be valid and available to the holders." Cedar Falls, the defendant, was not a city, but was an incorporated town. It is doubtful if the town could issue negotiable bonds other than is expressly provided for, and, if that is conceded, then the counsel for the defendant herein contend that, the bonds in suit being negotiable in form, they are therefore void.

It seems to me that the one question is, could the town lawfully become indebted? It has already been seen that it could for some purposes. By section 471 of the Code of 1873, with or without a vote of the people on certain conditions, a town had the power to erect waterworks. By a subsequent statute this was amended, so that a town

could erect water, gas, or electric light works, with the approval of the voters. So that for at least four purposes, aside from current expenses, and judgments for injuries occasioned by defective streets, the town could become indebted. Was the money received from Fernald for any of these lawful purposes? The petition alleges that it was received for corporate uses, and, under such allegations, how can it be said that it was not borrowed for one of those, or perhaps some other lawful use? And, if it could be so borrowed and used, could not the town give some evidence of the indebtedness? This is not a case wherein the plaintiff claims to be an innocent holder, because of a purchase without notice of defenses, before due, and for value. And therefore, whether the plaintiff holds by assignment or indorsement, and whether the form of the bonds is negotiable or nonnegotiable, it seems to me is wholly immaterial. City v. Weare, 59 Iowa, 95, 12 N. W. 786. The Circuit Court of Appeals for this circuit, in Geer v. School District, 111 Fed. 682, 49 C. C. A. 539, held that, where the bonds were void by reason of the lender innocently taking paper in that form, his assignee was subrogated to all his rights, and could recover the money thus paid for the bonds. And his rights to recover were emphasized by the fact that the school district had recognized the indebtedness for years by the payments of the annual interest as the same accrued from time to time.

The sixth count, as has been stated, is for money advanced in 1888, which, by parol, defendant agreed to pay at any time on demand after 10 years. Defendant insists that there can be no recovery because of the statute of frauds (a ground of demurrer), in that the contract was not to be performed within one year. Who was not to perform the contract within one year? It was the town, and the town only. Fernald was to perform his contract at once, and he performed it by then turning over the money. The rule is so well settled that it would be academic to cite authorities, that the federal courts will follow the state decisions on questions like this. It is governed wholly by a state statute, and the construction of that statute by the Iowa Supreme Court is an end of the debate. The case of Smalley v. Greene, 52 Iowa, 241–243, 3 N. W. 78, 35 Am. Rep. 267, puts the question at rest in Iowa. The town has Fernald's money. At least, it did have it. If it had no authority to receive it, it has it yet, unless the money has been embezzled or wrongly appropriated. And such presumptions cannot be indulged in. Nothing of the kind has been suggested, and would not be believed, if suggested, unless supported by strong proofs. Therefore it can be said, and must be said, that the town still has Fernald's money. Then, regardless of the validity or invalidity of the contract, why should not the town hand back this money?

The language of Justice Mathews of the Supreme Court, as used in the case of Chapman v. Douglas County, 107 U. S. 348–356, 2 Sup. Ct. 62, 69, 27 L. Ed. 378, is quite apt:

"The principle was applied in the case of Morville v. American Tract Society, 123 Mass. 129, 137 [25 Am. Rep. 40], where it was said: 'The money of the plaintiff was taken and is still held by the defendant under an agreement which it is contended it had no power to make, and which, if it had the power to make, it has wholly failed on its part to perform. It was money

of the plaintiff, now in the possession of defendant, which in equity and good conscience it ought now to pay over, and which may be recovered in an action for the money had and received. The illegality is not that which arises where the contract is in violation of public policy or of sound morals, and under which the law will give no aid to either party. The plaintiff himself is charged with no illegal act, and the corporation is the only one at fault in exceeding its corporate powers by making the express contract. The plaintiff is not seeking to enforce that contract, but only to recover his own money, and prevent the defendant from unjustly retaining the benefit of its own illegal act. He is doing nothing which must be regarded as a necessary affirmance of an illegal act.' The decision of this court in Hitchcock v. Galveston, 96 U. S. 341, 350 [24 L. Ed. 659], covers the very point. There a recovery was allowed for the value of the benefit conferred upon the municipal corporation, notwithstanding, and indeed for the reason, that the contract to pay in bonds was held to be illegal and void. 'It matters not,' said the court, 'that the promise was to pay in a manner not authorized by law. If payments cannot be made in bonds, because their issue is ultra vires, it would be sanctioning rank injustice to hold that payment need not be made at all. Such is not the law.' "

The foregoing quotation is taken from an opinion of the Massachusetts Supreme Court, but it has the approval of the Supreme Court of the United States.

On the face of the petition, plaintiff states causes of action in the first six counts. I do not deem it necessary to follow counsel in all branches of their argument. But, for the reasons given, the demurrer will be overruled, and, if the town has any defenses, they must be made to appear by an answer.

The seventh count has not been considered, as it was filed since the argument.

---

## THE CALDY.

## THE NEW ORLEANS.

### (District Court, D. Maryland. June 22, 1903.)

1. COLLISION—STEAMER AND ANCHORED VESSEL—OBSTRUCTING CHANNEL.

A steamship 314 feet long, which was anchored in the center of the Brewerton Channel of the Patapsco river, where it was 600 feet wide, and left there through the night, during which she swung around nearly at right angles to the channel, and was struck by a steamer attempting to pass under her stern, *held* in fault for unnecessarily obstructing the channel, there being safe anchorage grounds within a few miles, for keeping a negligent and insufficient anchor watch, and for failing to move up and change her position when she swung across the channel. The passing steamer also *held* in fault for going at too high speed, and without sufficient care in navigation, in view of the manifest danger in passing, and the known tendency to sheer when going close to the side of the channel, which in fact caused, or contributed to, the collision.

In Admiralty. Cross-libels for collision.

Daniel H. Hayne, for the New Orleans.

Blakistone & Blakistone, for the Caldy.