## Smith v. City of Raceland et al.

(Decided Feb. 26, 1935.)

672

W. T. SMITH for appellant.

JOHN T. DIEDERICH and R. H. RIGGS for appellees.

OPINION OF THE COURT BY JUDGE RATLIFF—Reversing.

This action was brought under the provisions of sections 639a-1 and 639a-2 et seq. of Carroll's Kentucky Civil Code of Practice, known as the Declaratory Judgment Act, for the purpose of securing a declaration of rights to determine whether the city of Raceland, a city of the fifth class, of Greenup county, Ky., has the right and authority to supply water to consumers entirely outside of the corporate limits of said city by building an addition and extension to its present water system. In 1932, the city of Raceland constructed a waterworks system for said city, and, as a means of financing it, sold to the Reconstruction Finance Corporation waterworks revenue bonds in the sum of $40,-000 to be paid out of the earnings of the water system. It was deemed necessary to secure its supply of water from the city of Russell, and for that purpose the city of Raceland constructed an eight-inch main from the source of the water supply at the corporate limits of the city of Russell to the city of Raceland.

In the contract between the city of Russell and the city of Raceland, it is provided that the city of Raceland should pay a minimum monthly bill of $90 or a total of $1,080 per year for which it would receive 600,000 gallons of water monthly or a total of 7,200,000 gallons per year at the rate of 15 cents per thousand gallons. However, the city of Raceland uses only about one-half of the minimum supply of water for which it contracted with the city of Russell, and is paying for approximately 350,000 gallons per year which it does not use. The citizens and residents of what is known as Flatwoods community petitioned the city council of Raceland to furnish the Flatwoods community with water by extending laterals or service lines from its

main line into the Flatwoods community, which has a population of about 1,750 people. The Flatwoods community is about two and one-half miles from the city of Raceland and lies on either side of the water main running from the city of Russell to the city of Raceland. A survey and estimation of the cost of this proposed extension were made and the cost estimated to be $36,200. The city of Raceland thereupon made application to the Federal Emergency Administration of Public Works for a loan sufficient in amount to construct the proposed addition and extension of its waterworks system to supply the Flatwoods community. When this application was made, the engineer of the Federal Emergency Administration of Public Works made a survey and an investigation to ascertain whether it would pay the interest on the bonds, the operating expenses, depreciation charges, and the liquidation of the bonds as they become due out of the revenue to be derived from the operation of the plant. The engineer was of the opinion that the project would be self-sustaining and recommended the loan. This federal agency proposed to donate $9,000 as an outright gift and to loan the city of Raceland $27,000 to be paid by the issuance of waterworks revenue bonds in that amount.

The Reconstruction Finance Corporation had already purchased $40,000 worth of bonds against the main plant of the Raceland waterworks, therefore, it became necessary for this body to be consulted as to the effect the additional issuance of water revenue bonds would have upon its interest as a bondholder, and, upon investigation by that body, it was of the opinion that the proposed project would be self-sustaining and would not impair the bonds theretofore issued, and of which it is the holder, against the original plant.

The city of Raceland made application to the Public Service Commission of Kentucky for a permit to build the extension and addition and that body issued to the city of Raceland a certificate of necessity and public convenience, authorizing the proposed extension. The evidence of Fred W. Gesling, a civil engineer, was taken for the city of Raceland, and it appears from his evidence, maps, and various exhibits filed that the project is practicable and would be self-sustaining.

The lower court was of the opinion that the city of Raceland had the right and power to make the pro-

posed addition and extension of its waterworks system and entered judgment authorizing the construction of the addition and extension and carrying out of the contract between the city of Raceland and the Federal Emergency Administration of Public Works, which provided for the issuance and sale of $27,000 of 4 per cent. revenue waterworks bonds of the city of Raceland as the means of financing the project. For a final determination of the rights of the parties, this appeal is prosecuted.

To sustain the judgment of the lower court, appellee relies upon the 1930 Acts (chapter 92, sec. 1 [section 2741l-23, Kentucky Statutes Supp. 1933]), and the certificate of the Public Service Commission of Kentucky (section 3952-1 et seq. of Kentucky Statutes 1934 Supplement, creating and vesting certain powers in the Public Service Commission of Kentucky), and certain opinions of this court, to which we will later refer.

Under section 2741l-23, supra, it is provided:
"Second, third, fourth, fifth and sixth class cities may acquire, operate and maintain water works.— That cities of the second, third, fourth, fifth and sixth class, whether organized under the general law or special charter law, and including such cities where the commission form of government has been adopted, are hereby authorized and empowered to purchase, establish, erect, maintain and operate water works, together with extension and necessary appurtenances thereto, within or without the corporate limits under provisions of this act for the purpose of supplying such city or town and the inhabitants thereof with water."

The authority granted by the statutes, supra, to cities named therein is that the city is authorized to maintain and operate waterworks system or extension outside of its corporate limits for the purpose of furnishing itself and inhabitants with a supply of water; or in other words, to obtain water outside the corporate limits and bring it to the city. It does not purport to authorize the city to extend its waterworks facilities beyond the city limits for the purpose of supplying an outside community. However, this statute does not prohibit a city from selling or disposing of its surplus water supply to an outside community, provided such outside community construct its own line or facilities

to the line or facilities of the city so furnishing such service. If the Flatwoods community should construct its water mains or laterals to, and connect with, the water main of the city of Raceland, then the city of Raceland could sell to the Flatwoods community its surplus water supply not needed by the residents of the city of Raceland. Rogers v. City of Wickliffe, 94 S. W. 24, 29 Ky. Law Rep. 587; Dyer v. City of Newport, 123 Ky. 203, 94 S. W. 25, 26, 29 Ky. Law Rep. 656.

With respect to the certificate or authority of the Public Service Commisson of Kentucky, its authority is not conclusive. That body is not a lawmaking body. Its powers and duties are administrative only. It cannot authorize the doing of an act prohibited by any fundamental principle of law. If the city of Raceland has no authority, either statutory or inherent, to extend its waterworks facilities beyond its corporate limits, a certificate of the Public Service Commission could not vest it with such a right.

The cases of Rogers v. City of Wickliffe, supra, Dyer v. City of Newport, supra, and Commonwealth v. City of Covington, 128 Ky. 36, 107 S. W. 231, 32 Ky. Law Rep. 837, 14 L. R. A. (N. S.) 1214, and City of Henderson v. Young, 119 Ky. 224, 83 S. W. 583, 26 Ky. Law Rep. 1152, are also cited and relied on by appellee.

It will be noted in the cases, supra, that the cities furnishing service to customers outside the city limits did not construct its main lines of service or system to the corporate limits of the other city or outside customer. It merely furnished its surplus of water, electricity, or other product to outside customers when such outside customers connected its service line with that of the city. These cases are discussed and distinguished in the case of Dyer v. City of Newport, supra, relied on by appellant. In the Dyer Case, the city of Newport installed and was operating a municipally owned waterworks plant. The city of Clifton, lying outside of, but near to the city of Newport, contracted with the city of Newport for a supply of water to be provided by the city of Newport by extending its water main to Clifton. A citizen and taxpayer of the city of Newport brought suit to enjoin the execution of the contract on the ground that it was ultra vires. It was admitted that the waterworks plant owned by the city of Newport was adequate to supply all of its citizens their present needs, and, in

addition, to comply with the contract with Clifton. In that opinion this court said:

"* * * But such municipalities may own property in what is termed their private as distinguished from their public capacity. Concerning such and its contracts relating thereto, it may sue or be sued in the same way and for the same causes that a private corporation or an individual may be. Included in such property are waterworks, and electric and gas plants for furnishing light and water to its inhabitants. It is not possible for a city to acquire property for any other purpose, or to engage in any kind of business, not incidental to its municipal capacity as an agency of government. For whether it is treated in its public or private capacity, it is always required to act alone with respect to matters legitimately pertaining to the government of its inhabitants. It is not within the power of the city of Newport to embark in even governmental enterprises beyond its territorial jurisdiction. It is not authorized to undertake by contract or otherwise to discharge a governmental duty to localities other than its own territory, for the reasons (1) that a municipality has only such power as is expressly delegated to it by the Legislature, and such as is incidentally included therein; and (2) that to execute any power of government presupposes the power to levy and collect taxes from its inhabitants and property within its jurisdiction to defray the expenses incurred in its execution. There is no express and no implied grant of power to Newport to engage in such enterprise beyond its corporate limits; nor has it the right, therefore, to levy and collect taxes for such purpose. * * * Nor could Newport acquire a franchise by purchase, or otherwise, in the absence of express legislative authority, to operate a waterworks system in and for the benefit of another municipality. We conclude that the contract in suit was void. It was beyond the power of the city of Newport to enter into it."

Appellee attempts to distinguish the Dyer Case, above quoted, from the case at bar, in that, it is argued, the contract was denied on the ground that the extension of the waterworks system from Newport to Clifton was to be financed by direct taxation and at the expense

of the taxpayers of the city of Newport; but in the case at bar, the cost of the proposed extension of waterworks facilties of the city of Raceland is to be paid by the water consumers of the Flatwoods community by selling to them the surplus water for which the city of Raceland is paying, but not using. But we do not agree with counsel that the Dyer Case was decided solely upon the theory of taxation. That question was discussed in the opinion and given some consideration and perhaps an additional reason for holding the contract void, but a reading of that opinion will readily disclose that the basic principle upon which it was founded was that the city of Newport had no authority, either express or implied, to embark in a business enterprise beyond its corporate limits, and for that reason the contract was ultra vires and void.

In distinguishing the Dyer Case from the cases of City of Henderson v. Young and Rogers v. City of Wickliffe, supra, the court said:

"We held that where a municipality owns and operates its own electric light plant, or its own waterworks, it may legally sell any excess of its product to outsiders. We adhere to that opinion. But in each of these cases the outside purchasers took the product from the plant as constructed and operated by the city, and the latter was not bound or permitted to extend its facilities beyond the corporate limits in order to accommodate such purchasers. If Clifton had constructed, or a private concern had constructed a plant of mains, pipes, etc., in Clifton to supply its citizens with water, Newport might lawfully sell them any of its surplus water from its plant."

Our conclusion is that the Dyer Case, supra, is conclusive of the case at bar and that the city of Raceland has no right or authority to engage in the waterworks business beyond its corporate limits.

For reasons indicated, the judgment is reversed.

The whole court sitting.