## Womack-Rayburn Co. v. Town of Worthington et al.

(Decided Feb. 18, 1936.)

DYSARD & TINSLEY for appellant.

JOHN F. COLDIRON for appellees.

OPINION OF THE COURT BY JUDGE RICHARDSON—Reversing.

The propriety of the court's action sustaining a demurrer to the petition as amended and to each paragraph of the reply is presented to us for review. The first and second paragraph of the reply is a traverse of the answer; the third is substantially a reiteration of the petition as amended.

The town of Worthington is a city of the sixth class. It is located near the towns of Raceland and Russell. Prior to January 9, 1931, the three towns were connected by one highway. To reach Russell, the residents of Worthington were required to travel to Raceland, thence to Russell, twice crossing the Chesapeake & Ohio Railway Company's track. On the 9th day of January, 1931, the town of Worthington, to remedy this road situation, entered into a contract with the Chesapeake & Ohio Railway Company, which owned extensive yard trackage within and without the town of Worthington, whereby the town contracted to vacate and abandon for the benefit of the railway company certain portions of its streets and alleys which had been constructed at the expense of the taxpayers. As a part of the consideration, the railway company agreed to contribute $25,000 to the construction of a highway by the town from the eastern terminus of Prospect avenue within the town of Worthington, to the western limits of the town of Russell. The town closed certain streets and alleys in conformity with the contract. The railway company paid into the treasury of the town $25,000 and executed and placed on record in the county clerk's office, a deed dedicating as a highway from the eastern terminus of Prospect avenue to the western boundary line of Russell, a strip of land fifty feet wide. The deed of the railway company reserved the right to the railway company to lay and maintain on and across the strip of land such pipes, sewer lines and tracks and other facilities as it may deem necessary in

the operation of its yards and the additional right to relocate at its own expense any portion of the highway built by the town of Worthington on this strip. It was stipulated in the deed that if the strip of land ceased to be used as a highway, then it should unconditionally revert to the railway company. After receiving the $25,000 and its deed, the town of Worthington caused to be constructed a gravel road on the strip of land described in the deed from the eastern line of Worthington to the western limits of Russell. The original cost was paid out of the $25,000 leaving a balance of approximately $6,000, which it deposited in bank as a special road fund. Later, in 1933, the town of Worthington decided to surface this road; the undertaking to be financed with this balance and a loan or grant of funds from the United States of America.

On September 5, 1933, by a proper ordinance, the trustees of the town made application to the Federal Emergency Relief Administration of Public Works for a grant of 30 per cent. of the cost of surfacing it. On December 23, 1933, by another ordinance, the chairman and clerk of the board of trustees were authorized and directed to execute and deliver an agreement with the Federal Emergency Relief Administration of Public Works for the United States of America, evidencing its grant of the 30 per cent. of the cost of the improvement to the town of Worthington. By a proper ordinance on the 11th day of December, 1933, it let a contract for the construction of the road within and without the corporate limits of the town of Worthington, to Womack-Rayburn Company. By an ordinance adopted April 22, 1932, it was provided that "this fund ($6,221.00, the balance of the $25,000.00 paid by the Chesapeake and Ohio Railway Company under its and the twon's contract) will be set aside in what is known as the 'special street and road improvement fund,' * * * and shall be used only for the improvement and repair of streets and roads in the town of Worthington built with funds from the Chesapeake & Ohio Railway Company and such roads heretofore constructed and improved by money received from the Chesapeake and Ohio Railway Company." The last part of this sentence includes the road to Russell.

To induce the Federal Emergency Relief Administration of Public Works to grant the 30 per cent. of

the cost of reconstructing the road· from the eastern terminus of Prospect avenue in Worthington to the western corporation line of the city of Russell and in order to secure the grant of federal funds it "inviolably appropriated" the $4,658.21 for that specific purpose. The title of this ordinance is:.

> "An ordinance inviolably appropriating the sum of $4658.21 now on deposit in First & Peoples bank, Russell, Kentucky, in special road fund for the purpose of carrying out the agreement of the town of Worthington with the United States of America and particularly its grant agreement for the surfacing of the roadway between the town of Worthington and the city of Russell."

The Federal Emergency Relief Administration of Public Works made a grant to Worthington of 30 per cent. of the cost of constructing the road to the city of Russell in accordance with the agreement authorized by this ordinance. The city paid the contractor the estimated cost of the construction of the road within the corporate limit of the town of Worthington; but refused to pay out of these funds, or any portion thereof, the cost of the construction of the road beginning at the eastern terminus of Prospect avenue in Worthington and extending to the western corporation line of the city of Russell. Hence, this action.

The original and first and second amended petition and paragraph three of the reply contained proper averments setting forth these facts, including the substance of the foregoing ordinances, and contracts.

In the original petition a judgment was sought requiring the town of Worthington and its officers to pay out of the above $4,658.21, and the sum granted by the Federal Emergency Relief Administration of Public Works, a sufficiency to satisfy the sum of $1,779.16, a part of the cost of the surfacing of the road from the corporate limits of Worthington to the corporate limits of Russell. The second amended petition sought the payment of an additional sum of $2,470.56 out of the same funds for the same purpose.

The trial court sustained a demurrer to the petition as amended and to each paragraph of the reply. Therefore, this appeal is here. Our resume of the

pleadings shows this is not an action to require the town of Worthington to pay any sum out of a fund derived from taxation. Nor is it an action to compel it to levy and collect of the taxpayers a sum with which to pay the $1,779.16 and $2,470.56.

The town of Worthington contends that the contract to construct the road beyond the limits of the town was ultra vires, and, therefore, void.

The soundness of this insistence is beyond controversy, where the payment thereof is sought out of funds derived, or to be derived, from taxation. It is a general rule that a municipal governing body cannot bind the corporation by any contract which is beyond the scope of its powers or entirely foreign to the purposes of the corporation or against public policy. This doctrine grows out of the nature of municipal corporations and rests upon reasonable and solid grounds. The inhabitants are the corporators. The governing body thereof is but the public agent of the corporation. Its duties and powers are prescribed by the Constitution and the statutes which all persons not only may know, but are bound to know. The opposite doctrine may be fraught with such danger and accompanied with such abuse that it would soon end in the ruin of municipalities, or be legislatively overthrown. See section 162 of the Constitution of Kentucky; Dillon on Municipal Corporations (5th Ed.) sec. 791; Dyer v. City of Newport, 123 Ky. 203, 94 S. W. 25, 29 Ky. Law Rep. 656; Walker v. City of Richmond, 173 Ky. 26, 189 S. W. 1122 Ann. Cas. 1918E, 1084; Smith v. City of Raceland et al., 258 Ky. 671, 80 S. W. (2d) 827.

The determinate question confronting us is, Does this general principle apply and control the right of the Womack-Rayburn Company to a sufficiency of the $4,658.21 which by ordinance of the town of Worthington was received from the Chesapeake & Ohio Railway Company for the purpose of constructing the road in question, and which was "inviolably appropriated" by an ordinance for that purpose, together with a sufficiency of the fund received from the Federal Emergency Relief Administration of Public Works on the agreement of the town of Worthington with which to pay the contract price for the construction of the road beyond the corporate limits?

The contract of Womack-Rayburn Company for the construction of this road, the ordinance appropriating the $4,658.21 for that purpose, the accepted application of the town to the Federal Emergency Relief Administration of Public Works for 30 per cent. of the cost of construction thereof, and all the ordinances appertaining thereto and to this road and these funds, are so interrelated and dependent upon each other, they should be construed conjunctively. It is true the town of Worthington was without either constitutional or statutory authority to enter into a conract for the construction of a highway beyond its corporate limits, and thereby obligate itself to levy and collect of the taxpayers residing within the corporate limits, taxes for the purpose of paying fior the construction of this highway. It is likewise true that the principle applicable and controlling in such case is inapplicable in the present one. The contract of Womack-Rayburn Company with the town of Worthington, when viewed in connection with the above ordinances, and the fact the $4,658.21 was derived from a contract with the Chesapeake & Ohio Railway Company, and 30 per cent. of the cost of the construction of the road was obtained by the town on its application to the Federal Emergency Relief Administration of Public Works pursuant to the ordinances appertaining thereto, it is easy to be seen, is distinguishable from one entered into by the town for the construction of a road outside of the corporate limits, to be paid for out of funds already derived from taxation, or to be derived in the future by taxation.

In Staebler & Gregg v. Town of Anchorage, 186 Ky. 124, 216 S. W. 348, 352, the contract was repudiated by the town of Anchorage on the ground that it was illegal. The appellants at the time the contract was repudiated by the town, had upon the streets of the town material delivered in contemplation of the fulfillment of their contract with the town, which was invalid. The town seized and appropriated the same to its own use, on the theory the same were in the streets, and it had a right thereto. We said:

"When the illegal contract sued on was repudiated and appellants required to discontinue operations under it, it is clear that the town was without right to seize or appropriate their personal property.

\* \* \* The contract being invalid, it gave the town no right to the piping and tiles sued for, and which may have been left by appellants upon the ground in the street. If it seized such personal property of appellants without any more right than the invalid contract gave it, and appropriated same to its use \* \* \* the appellants are entitled to recover the damages for such tortious act, the measure of which is the reasonable value of the property when converted or sold or destroyed.''

In the present case the town's custody and control of the $4,658.21 and that granted by the Federal Emergency Relief Administration of Public Works were acquired exclusively for constructing the road which Womack-Rayburn Company obligated itself to construct, and which it actually constructed by reason of the fact such funds were so in the custody and control of the town of Worthington for that purpose. To permit the town on the facts to repudiate its contract with Womack-Rayburn Company, and retain and appropriate to its own use the $4,658.21, and the sum granted it by the Federal Emergency Relief Administration of Public Works, would be equally as tortious as were the acts of the town of Anchorage repudiating its contract and appropriating to its own use material which the contractor had placed in the streets for the purpose of carrying out his contract with the town of Anchorage. In Chapman v. County of Douglas, 107 U. S. 348, 2 S. Ct. 62, 70, 27 L. Ed. 378, the Supreme Court of the United States quoted with approval from Pimental v. City of San Francisco, 21 Cal. 351, 362, this principle:

''The city is not exempted from the common obligation to do justice which binds individuals. Such obligations rest upon all persons, whether natural or artificial. If the city obtains the money of another by mistake or without authority of law, it is her duty to refund it, from this general obligation. If she obtain other property which does not belong to her, it is her duty to restore it, or, if used, to render an equivalent therefor, from the like obligation. Argenti v. San Francisco, 16 Cal. [255] 282. The legal liability springs from the moral duty to make restitution.''

See Aldrich v. Chemical Nat. Bank, 176 U. S. 618, 630,

20 S. Ct. 498, 44 L. Ed. 611; Fernald v. Town of Gilman (C. C.) 123 F. 797, 801; Tennessee Ice Co. v. Raine, 107 Tenn. 151, 156, 64 S. W. 29; Salt Lake City v. Hollister, 118 U. S. 256, 263, 6 S. Ct. 1055, 30 L. Ed. 176; Muir v. Murray City, 55 Utah, 368, 374, 186 P. 433.

The town of Worthington secured the control and custody of $4,658.21 and the grant to it of the sum furnished by the Federal Emergency Administration of Public Works for the purpose of making an ultra vires contract for the construction of this particular road, and in virtue of this control and custody of these funds, it entered into the contract with Womack-Rayburn Company to construct the same. To allow it after so securing this control and custody of this fund and the constructed road to become the owner thereof because its contract with Womack-Rayburn Company was also ultra vires and void, would be inconsistent with and violative of a primitive sense of justice. To allow it to do so, in the circumstances, would be a reproach to the law, and to rule there is no remedy available to Womack-Rayburn Company would be a like reproach to the law. To refuse to require the town of Worthington to apply the $4,658.21 and the sum granted to it by the Federal Emergency Relief Administration of Public Works to the payment of the construction of the road would be a confession of the impotency of the law to avert the city's wrongful conversion of a fund not derived from taxation, but by others intrusted to its control and custody for a definite purpose. Its effort thus to acquire ownership of this fund is like unto that of a tenant in possession denying the title of his landlord. We can think of no fair reason, either legal, equitable, or moral, why the funds sought by Womack-Rayburn Company should not be applied to the payment of the cost of construction of this road, nor for suffering the city to retain and appropriate the same to its own use to the detriment of Womack-Rayburn Company. Valley Falls Co. v. Taft, 27 R. I. 136, 61 A. 41; Town of New Haven v. Weston, 87 Vt. 7, 86 A. 996, 46 L. R. A. (N. S.) 921.

The town of Worthington was, in reality, a mere instrumentality or agency to receive from the railroad company and the Federal Emergency Relief Administration of Public Works the money to be paid by it on the contract price for the construction of this partic-

ular road. The town's custody and control of the fund were acquired not by or through its ownership, but a trust for a definite purpose—the surfacing of a specified road. To allow it to retain the fund as owner would be equivalent to approving its acquiring ownership by its own act of repudiation of not only its contract with the Womack-Rayburn Company, but of its contracts with the railway company and the Federal Emergency Relief Administration of Public Works. The doctrine of ultra vires is for the protection of the taxpayers of a municipality and is perfectly consistent with the principles of equity, good conscience, and fair dealing. Great Atlantic & Pacific Tea Co. v. City of Lexington, 256 Ky. 595, 76 S. W. (2d) 894. To apply herein the doctrine of ultra vires and thus enable the town to become owner of the funds sought to be subjected to the payment of the construction of the road in question, would be a perversion of its purpose. A mandamus is a proper remedy in such case.

The judgment is reversed, with directions to overrule the demurrer to the petition as amended and to the reply, and for proceedings consistent herewith.